Bissell, P. J.
This case will he decided by a simple statement of it. We shall content ourselves with the suggestion of the propositions of law by which it is controlled, because these have been so often the subject of consideration and announcement by both the appellate courts that it would neither advantage the litigants nor the profession to reformulate or restate them.
In 1895, one Palm was indebted to the J. S. Brown & Brother Mercantile Company and sundry other merchants in Denver in the sum total of nearly $2,600. In June the other creditors made assignments of their claims to that company, without consideration, though the transfers were absolute. The apparent purpose was to enable the. mercantile company to enforce a collection, accounting to the other creditors when they should realize. At this time Palm was indebted to the German National Bank in about the sum of $1,100. The bank was in the hands of a receiver who brought suit to collect the claim and got judgment in July, put an execution in the hands of the United States marshal who took the stock. Thereafter the mercantile company brought suit against the marshal to recover the goods or their value. The original suit which they begun with an allegation of absolute ownership was dismissed and the present suit started *394 on a wholly different theory, which was that the transaction as between Palm and the Brown & Brother Mercantile Company was one of security rather than of absolute transfer. On the 10th of June, Palm came to Denver and entered into negotiations with the mercantile company with reference to taking care of their claim and those which they held by transfer. In carrying out the arrangement agreed upon Palm made a bill of sale, absolute on its face, for the express consideration of $2,557.34, transferring to the mercantile company all his stock in trade at Castle Rock and all the book accounts which were due him as the result of his business. The true nature of the transaction, however, is better exhibited by an agreement which was at the same time made between the mercantile company and Palm which recited substantially that he was indebted to sundry parties in the consideration named in the bill of sale; that one of the creditors, Wood & Company, held some merchandise and accounts as collateral security, and it was then agreed between the Brown & Brother Mercantile Company as trustee and Palm, that that corporation should take charge of the business, bills receivable, and carry on the business, making such purchases and sales as were necessary, with power of collection, paying certain dividends under certain circumstances, and that ultimately if Palm should pay the debt held by the company, it should turn the property back to him. There were one or two other peculiar provisions in the agreement among which was the clause that the corporation should have power to settle or compromise claims under the advice of Palm, and they should have the power to pay or compromise on their own terms all bills and indebtedness owing by Palm. This is substantially all that need be stated respecting the terms of the arrangement between the mercantile company and Palm, except we might state that at the time of this transfer or arrangement, or compromise, whatever it'was called, nothing was done between the parties to indicate that there was an absolute or bona fide sale between Palm and the mercantile company by which the goods and bills receivable were turned over to the com *395 pany in payment of its debt or the debts which it controlled. In fact the whole case showed that nothing of that sort was done. The parties took no account pf the stock and no invoice of the bills receivable, and there was nothing done to indicate that there was an absolute sale and transfer by the one to the other in payment of the debt. Yet notwithstanding this, when they made a demand on the marshal for the goods, they represented themselves as the absolute owners and originally brought suit on this theory. At the trial it was testified by the representative of this corporation that Palm would have had an interest after the debts were paid, showing that he still had an interest in the property. In addition to this it appeared that they paid him money, paid his board at times, and that he took goods out of the stock which were charged to him, and further that for more than a month after this thing was done he had a key to the store and slept there all the time, and apparently had as much to do about the business as the corporation. It is hardly necessary to go further than this in stating the case, although we might with more particularity detail its history. This, however, is enough to show that the case is clearly brought within many decisions in this state, which hold that wherever there is an apparent transfer or sale of property not absolute, and where a trust is reserved for the benefit of the vendor, the sale is invalid as against existing creditors. From the evidence in this case it is very manifest that there was a benefit reserved to Palm, and that this was simply a method adopted by the corporation to secure its debt. If the company had taken an absolute security and put it on record and had assumed the position of mortgagees in good faith to secure a debt, and there had been no benefit reserved to the mortgagor, the security would doubtless have been good and the company being first in time would have been first in right, and been able to maintain their possession as against the judgment creditor. The court below, however, on the testimony found it was not a sale in good faith, and since it did not take the form of a mortgage, but was simply a transaction which *396 tended to delay and defraud creditors was a violation not only of the statutes but of the legal principles governing such transactions which have been repeatedly expressed by the supreme court. We find ourselves quite unable to disagree with the trial court, or to hold that its opinion is not supported by the testimony and since it appears to be right and is abundantly sustained by the evidence, the judgment must necessarily be affirmed.

Affirmed.